**CUDAHY COMPANY, a corporation,**
**Plaintiff,**

**v.**

**RAGNAR BENSON, INC., a corporation; Cook & Nichol, Inc., a corporation; Advanced Engineering Corporation, a corporation d/b/a Gebhardt's Controlled Refrigeration Systems; Temperature Engineering, Inc., a corporation; and Refrigerating Specialties, Inc., a corporation, Defendants.**

**Civ. A. No. 79–Z–956.**

United States District Court,
D. Colorado.

May 22, 1981.

---

Bruce F. Fest, Wood, Ris & Hames, P.C., Denver, Colo., for plaintiff.

Marc J. Musyl, Overton, Heyl & Bostrom, P.C., Englewood, Colo., for defendant Ragnar Benson, Inc. Richard V. Houpt, Jonathan B. Gilbert, Pederson & Houpt, P.C., Chicago, Ill., of counsel.

Robert S. Treece, Hall & Evans, Denver, Colo., for defendant Cook & Nichol, Inc.

Robert W. Hansen, Hansen & Breit, P.C., Denver, Colo., for defendant Advanced Engineering Corp., a corporation d/b/a Gebhardt's Controlled Refrigeration Systems.

Randall S. Herrick-Stare, Duane O. Littell, Littell & Dickinson, Denver, Colo., for defendant Temperature Engineering, Inc.

Lowell Fortune, Lowell Fortune, P.C., Denver, Colo., for defendant Refrigerating Specialties, Inc.

## ORDER

WEINSHIENK, District Judge.

This matter is before the Court on defendant Ragnar Benson, Inc.'s (Ragnar Benson) Motion for Judgment on the Pleadings, defendant Cook & Nichol, Inc.'s (Cook & Nichol) Motion for Summary Judgment and plaintiff Cudahy Company's (Cudahy) Motion for Order of Dismissal of Defendant—Temperature Engineering, Inc.

Invoking this Court's jurisdiction on the basis of diversity of citizenship, 28 U.S.C. § 1332, Cudahy brings this suit against several defendants who are allegedly liable for a defect in the refrigeration system at its Denver, Colorado, meat packing plant. According to the Amended Complaint, on October 25, 1975, approximately 1,000 pounds of liquid ammonia escaped from the refrigeration system, causing substantial damage to Cudahy's property and interrupting its business operations. The defendants include Ragnar Benson, who designed and manufactured the refrigeration system for plaintiff's plant in 1973 and 1974, and Cook & Nichol, who participated in the design of the refrigeration equipment. Also named in the Amended Complaint are Advanced Engineering Corporation, d/b/a Gebhardt's Controlled Refrigeration Systems, seller and distributor of chillers used in the Cudahy system, and Refrigerating Specialties, Inc., manufacturer and seller of component parts of the system. Temperature Engineering, Inc., named in the original Complaint, is technically a defendant as well. Cudahy has moved to dismiss Temperature Engineering and the Amended Complaint contains no allegations against it. The Court has reserved ruling on this Motion, pending decision of the motions of Ragnar Benson and Cook & Nichol.

Ragnar Benson moved for judgment on the pleadings, submitting various affidavits and exhibits in support of the motion. Plaintiff requested formal notice of the Court's intention to treat the motion as one for summary judgment under Fed.R.Civ.P. 56, as well as the opportunity to present affidavits in support of its opposition to the motion. See Fed.R.Civ.P. 12(e). The Court gave such notice and granted Cudahy time to respond.

In support of its Motion for Summary Judgment, Cook & Nichol incorporated materials previously filed by Ragnar Benson and submitted an additional affidavit with exhibits. Opposing the Motion, Cudahy filed an affidavit and a brief which incorporates its memoranda in opposition to Ragnar Benson's motion.

By stipulation of counsel, the Court has visited the plant and has observed the refrigeration system. Having also considered the parties' briefs and supporting documents, the Court is fully advised and is prepared to rule.

### I. Colorado Statute of Limitations

In their respective Motions, Ragnar Benson and Cook & Nichol assert that C.R.S. 1973, § 13–80–127, the Colorado statute of limitations concerning actions against architects, contractors, engineers, and inspectors, bars the within action against them. Ragnar Benson contends that as general contractor, architect and engineer of the plant in question, it is within the statute's protection; Cook & Nichol claims the statutory protection as designer-engineer of the refrigerator system.

C.R.S. 1973, § 13–80–127,[1] provides, in pertinent part, that actions against architects, contractors, engineers, or inspectors for personal injury or property damage caused by the "design, planning, supervision, inspection, construction or observation of construction to any improvement to real property" must be brought within two years after the claim for relief arises, and in no case more than ten years after substantial completion of the improvement.[2] There is no dispute that Cudahy's cause of action accrued on October 20, 1975, the date the damage occurred. The Complaint was filed on July 23, 1979, almost four years later. Thus, the motions for summary judgment present the following issues for resolution: (1) whether Ragnar Benson and Cook & Nichol are within the class protected by the statute; (2) whether the allegedly defective parts of the system are "improvements to real property" within the meaning of the statute; (3) whether the statute applies to any aspects of plaintiff's claim; and, if so, (4) whether the statute is constitutional.

1. Are movants within the protected class?

■ The allegations in the Amended Complaint are sufficient to enable the Court to find that Ragnar Benson and Cook & Nichol are within the class afforded the special protection of § 13–80–127. The October 17, 1972, agreement between Cudahy and Ragnar Benson confirms the allegation that Ragnar Benson was general contractor of the addition to the plant, performing engineering, architectural, supervisory and other related services. The fact that Ragnar Benson also had a contractual duty to supply some materials does not take it out of the protected class.

It is undisputed that Cook & Nichol was Ragnar Benson's subcontractor and designer of the refrigeration system. As such, Cook & Nichol, too, is within the protected class.

2. Are the allegedly defective parts "improvements to real property" within the meaning of the statute?

■ Having viewed the plant and refrigeration system, as well as copies of the construction plans, the Court finds without hesitation that the system is an improvement to real property within the meaning of § 13–80–127. Although case law regarding fixtures may be relevant by analogy for purposes of interpreting this statutory provision, the Court need not decide whether

---

1. The statute was amended in 1979. However, it is undisputed that, if the statute applies, the original version governs. See C.R.S. 1973, § 13–80–127(4)(b), as amended.

2. C.R.S. 1973, § 13–80–127, provides in pertinent part:

   (1) All actions against any architect, contractor, engineer, or inspector brought to recover damages for injury to person or property caused by the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within two years after the claim for relief arises, and not thereafter, but in no case shall such an action be brought more than ten years after the substantial completion of the improvement to the real property, except as provided in subsection (2) of this section.

   (2) In case such injury to person or property occurs during the tenth year after substantial completion of the improvement to real property, said action shall be brought within one year after the date upon which said injury occurred.

the system is a fixture. Rather, the issue is whether the system is an "improvement to real property" in the ordinary sense of the term. *Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 225 N.W.2d 454, 456 (1975). The fact that the header cap which failed is only a few inches wide and is an interchangeable part is not decisive, nor is the weight of the allegedly defective valve. The design and construction of the refrigeration system govern the Court's conclusion. The header cap is welded to the pipe system and both are integral components of the refrigeration system which is itself an essential part of the overall structure of the plant. Without the system, the plant could not serve the purpose for which it was designed. See *Yakima Fruit and Cold Storage Co. v. Central Heating and Plumbing Co.*, 81 Wash.2d 528, 503 P.2d 108 (1972).

3. What portions of Cudahy's claims are barred by the statute?

■ Only actions for personal injury or property damage caused by design, planning, supervision, inspection, construction, or observance of construction of improvements to real property are barred by § 13–80–127. The statute does not limit claims for deficiencies in the structure itself, as opposed to consequential property damage. *Duncan v. Shuster-Graham Homes, Inc.*, 194 Colo. 441, 578 P.2d 637 (1978), *Tamblyn v. Mickey Fox, Inc.*, 195 Colo. 354, 578 P.2d 641 (1978). Section 13–80–127 does not, therefore, prevent Cudahy from seeking recovery against Ragnar Benson and Cook & Nichol for the cost of repair of the deficiencies in the system itself. It does, however, bar recovery for consequential property damage. Consequential damages include claims for the lost use of the plant. See *L. E. Whitlock Truck Service, Inc. v. Regal Drilling Co.*, 333 F.2d 488, 492 (10th Cir. 1964) and C.R.S. 1973, § 4–2–715(2)(a).

4. Does the legislative classification in § 13–80–127 violate the equal protection guarantees of the state and federal constitutions?

Before addressing the constitutional questions, the Court must consider whether Cudahy has standing to raise them. Judge Jim Carrigan's decision in *McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334 (D.Colo.1980), a case that also involves the constitutionality of § 13–80–127, contains a thoughtful and persuasive discussion of the standing of the plaintiffs in that case. This Court adopts Judge Carrigan's reasoning on the standing issue, noting that much of Cudahy's claim will be barred if the statute is upheld.

In considering the question of the constitutionality of § 13–80–127, the Court is cognizant of the controversy similar statutes have raised among the courts of other states which have ruled upon the issue. As Cudahy acknowledges, the state supreme courts which have addressed the constitutionality of their state's analogous statute are almost equally divided on the question. Compare *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (N.J.1972), and *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (N.M.1977), (holding statute constitutional) with *Fujioka v. Kam*, 514 P.2d 568 (Haw.1973), and *Kallas Millwork Corp. v. Square D Co., supra,* (holding statute unconstitutional) Courts in Colorado have also expressed differing views on the constitutionality of the statute. In *Duncan, supra,* the Colorado Supreme Court raised the issue on its own motion but did not resolve it. Judge Carrigan of the United States District Court has recently held the statute violative of the federal equal protection clause. *McClanahan, supra.* Conversely, Judge Susan Barnes of the Denver District Court has upheld the statute against a similar attack. *Yarbro v. Hilton Hotels Corporation, et al.,* No. C–79362 (Colo.Dist.Ct. Apr. 11, 1980). In a related area, the Colorado Supreme Court has upheld C.R.S. 1973, § 13–80–105, which provides a six year statute of limitations for medical malpractice actions. *Mishek v. Stanton*, 616 P.2d 135 (Colo.1980).

■ Because the statute grants immunity from suit after ten years to architects, contractors and engineers (hereinafter con-

struction professionals) while denying it to materialmen and suppliers (hereinafter materialmen), Cudahy argues that the statute violates the Colorado Constitution's prohibition against special legislation (Article II, § 25) and requirement of equality of justice (Article II, § 6) and the United States Constitution's Equal Protection Clause (Amendment XIV). The proper standard of review under these provisions is essentially the same. When local economic regulation that does not burden fundamental rights or is not based upon inherently suspect distinctions is challenged on equal protection grounds, this Court "may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations . . . ; in the local economic sphere, it is only the *invidious* discrimination, the *wholly* arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *New Orleans v. Duke*, 427 U.S. 297, 303–4, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (citations omitted, emphasis added). See also *McCarty v. Goldstein*, 151 Colo. 154, 376 P.2d 691 (1962).

■ According the appropriate deference to the Colorado legislature, the Court finds that the statutory distinction between construction professionals and and materialmen is neither invidious nor wholly arbitrary. As one commentator has suggested, the statute may be intended to mitigate the potential unfairness to construction professionals subject to an expanded duration of liability as a result of the judicial erosion of the privity defense[3] and the judicial adoption of the discovery rule for accrual of a cause of action in professional negligence cases.[4] Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action, 18 Cath.U.L.Rev. 361 (1969). See also *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662, 664–66 (1972). As a threshold consideration, the Court recognizes the principle that, in en-

acting remedial legislation, the legislature need not attack an entire problem at once, but may utilize a gradual approach. Moreover, the failure to extend the immunity to materialmen is not wholly arbitrary because there are several bases upon which the legislature could reasonably have concluded that the groups warrant different treatment. One distinction lies in the nature of the work performed. To the extent that materialmen furnish standard manufactured goods, while construction professionals perform specialized work, and that the materialmen's liability is based upon strict liability while the construction professional's liability is premised upon failure to exercise due care, it may be more difficult for the construction professional to defend a suit many years after completing the work than the materialmen; memories fade, plans are destroyed. See the discussion in 18 Cath.U.L.Rev. at 371. As time passes, there is also an increased possibility of the owner's intervening negligence, such as failure to maintain the improvement, and greater difficulty of proving the actual cause of the plaintiff's injuries. *Howell v. Burk, supra.* This problem of proof is usually less serious where the allegation is one of defective materials or supplies.

In view of these differences between construction professionals and materialmen, the Court cannot say that the legislative judgment to grant one group immunity from suit after a reasonable period of time while denying it to the other is either invidiously discriminatory or wholly arbitrary. Therefore, the motions for summary judgment on behalf of Ragnar Benson and Cook & Nichol are granted except as to plaintiff's claims for repair damages.

II. Motion for Order of Dismissal of Defendant—Temperature Engineering, Inc.

Plaintiff has moved to dismiss Temperature Engineering as a defendant because it has resolved all of its claims against Temp-

---

**3.** Colorado cases which involve the viability of the privity defense include *DeCaire v. Public Service Co.*, 479 P.2d 964 (Colo.1971), and *Wright v. Creative Corp.*, 30 Colo.App. 575, 498 P.2d 1179 (1972).

**4.** The Colorado Supreme Court endorsed the discovery rule for accrual of action in professional negligence cases in *Owens v. Brochner*, 474 P.2d 603 (Colo., 1970).

erature Engineering and there are no counterclaims, crossclaims, or third party claims involving Temperature Engineering. After counsel for the other defendants refused to agree to the dismissal, the Court ordered them to file any written objections within ten days. Only Cook & Nichol filed an objection, requesting an opportunity to engage in discovery to ascertain whether it had a viable crossclaim against Temperature Engineering before the Court granted the Motion to Dismiss. As noted above, the Court has reserved ruling on the Motion to Dismiss pending decision of Cook & Nichol's Motion for Summary Judgment.

The Motion will be granted 20 days from the date of this opinion unless a defendant files a crossclaim against Temperature Engineering within said 20 day period of time. In summary, it is

ORDERED that

(1) defendant Ragnar Benson's Motion for Judgment on the Pleadings and defendant Cook & Nichol's Motion for Summary Judgment are granted except as to claims for costs of repair of deficiencies in the system, and

(2) plaintiff's Motion for Order of Dismissal of Defendant—Temperature Engineering, Inc., will be granted 20 days from the date of this opinion unless a defendant files a crossclaim against it within said 20 day period.