Andrew McCULLOCH, Appellant,

v.

FOX & JACOBS, INC., Appellee.

No. 05-83-01329-CV.

Court of Appeals of Texas,
Dallas.

July 15, 1985.
Rehearing Denied Aug. 23, 1985.

**920**

Terry Hyatt, Alice Oppenheim, Dallas, for appellant.

Ronald W. Johnson, Dallas, for appellee.

SPARLING, Justice.

Appellant, Andrew McCulloch, appeals a summary judgment disposing of his causes of action for damages against defendant/appellee, Fox & Jacobs, Inc. McCulloch contends, *inter alia*, that the court erred by finding that the summary judgment evidence established as a matter of law that TEX.REV.CIV.STAT.ANN. art. 5536a (Vernon Supp.1985) immunized Fox & Jacobs from liability. Alternatively, McCulloch argues that if the statute does in fact protect Fox & Jacobs, it unconstitutionally denies him equal protection of the laws, due process of law, and access to the courts. We disagree with all contentions and, accordingly, affirm.

Summary judgment is proper only if the pleadings, depositions, affidavits, and admissions in the record establish that no genuine issue of material fact exists and that the movant is entitled to relief as a matter of law. TEX.R.CIV.P. 166–A(c); *McFadden v. American United Life Insurance Co.*, 658 S.W.2d 147, 148 (Tex. 1983); *Wesson v. Jefferson Savings & Loan Association*, 641 S.W.2d 903, 904–05 (Tex.1982). In reviewing the propriety of a summary judgment, we accept as true the nonmovant's version of the facts adduced through the summary judgment proof and indulge every reasonable intendment in the non-movant's favor. *Nelson v. Krusen*, 678 S.W.2d 918, 919 (Tex.1984); *Williams v. Bennett*, 610 S.W.2d 144, 145 (Tex.1980); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex. 1972).

From approximately 1960 to 1966, Fox & Jacobs, a developer and builder of residential single-family homes, developed and constructed the Greenwood Hills community. In addition to planning and building houses, Fox & Jacobs, in 1961, contracted for the construction of a swimming pool which it conveyed to the Greenwood Hills Community Club as part of a community package to attract persons to reside in the development.

On July 13, 1979, McCulloch dove into the shallow end of the pool and severed his spinal cord, suffering severe injuries and incurring substantial expenses for which he seeks reparation from Fox & Jacobs. McCulloch alleges that Fox & Jacobs negligently failed to warn him of a dangerous condition, failed properly to inspect the swimming pool, and failed to provide adequate lighting at the pool. Additionally, McCulloch alleges a cause of action in strict liability, charging that the defective design of the pool rendered it unreasonably dangerous and that Fox & Jacobs failed to provide sufficient markings of the depth of the pool or otherwise warn of the danger. Finally, McCulloch argues that Fox & Jacobs breached warranties of merchantability and fitness for intended purpose.

In its motion for summary judgment, Fox & Jacobs contended that article 5536a barred each and every alleged cause of action. Article 5536a provides, in pertinent part:

Section 1. There shall be commenced and prosecuted within ten years after the substantial completion of any improvement to real property ..., and not afterward, all actions or suits in court for damages for any injury ... or unsafe

condition of any such real property ... or improvement attached to such real property against any *registered or licensed engineer or architect* in this state performing or furnishing the design, planning, inspection of construction of any such improvement, equipment or structure or against any such person so performing or furnishing such design, planning, inspection of construction of any such improvement, equipment, or structure;

Section 2. There shall be commenced and prosecuted within ten years after the substantial completion of any improvement to real property, and not afterward, all actions or suits in court for damages for any injury ... to a person ... arising out of the defective or unsafe condition of any such real property or any deficiency in the construction ... of any improvements on such real property against *any person performing or furnishing construction ... of any such improvement....* [Emphasis added.]

The parties do not dispute that the pool constituted an "improvement" within the meaning of the statute. McCulloch argues, however, that the express language evinces a legislative intent to limit the liability of persons involved in the actual construction of improvements to real property and that Fox & Jacobs was merely a residential developer. Fox & Jacobs counters that, as supervisor of the project, it was sufficiently involved in the construction process to merit the protection of the statute.

 The cardinal rule of statutory construction is to ascertain the intent of the legislature and to give effect to that intent. *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 384 (Tex.1982); *State v. Terrell,* 588 S.W.2d 784, 786 (Tex. 1979); *Minton v. Frank,* 545 S.W.2d 442, 445 (Tex.1976). The legislative intent is determined through scrutiny of the statute in its entirety, rather than through study of isolated portions. *Taylor v. Firemen's & Policemen's Civil Service Commission,* 616 S.W.2d 187, 190 (Tex.1981); *Citizen's Bank of Bryan v. First State Bank,* 580 S.W.2d 344, 347, 348 (Tex.1979); *City of*

*Mason v. West Texas Utilities Co.,* 150 Tex. 18, 237 S.W.2d 273, 278 (1951). If the statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate, and words should be given their common, everyday meaning. *Cail v. Service Motors, Inc.,* 660 S.W.2d 814, 815 (Tex. 1983); *Minton,* 545 S.W.2d at 445; *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670, 672 (Tex.1968). A reviewing court, however, is not confined to the literal meaning of the words used but must consider that which is implied as well as that which is express. *Citizen's Bank,* 580 S.W.2d at 348; *Austin Road Co. v. Evans,* 499 S.W.2d 194, 203 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). Since article 5536a is curative or remedial, *Hill v. Forrest and Cotton, Inc.,* 555 S.W.2d 145, 149 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.), it should be given a comprehensive and liberal construction rather than a technical construction which would defeat the purpose motivating its enactment. *City of Mason,* 237 S.W.2d at 280. Finally, a statute should be given a reasonable interpretation to avoid injustice or absurd consequences. *Gulf Insurance Co. v. James,* 143 Tex. 424, 185 S.W.2d 966, 969 (1945); *State Highway Department v. Gorham,* 139 Tex. 361, 162 S.W.2d 934, 936 (1942); *Alvarado v. Gonzales,* 552 S.W.2d 539, 542 (Tex.Civ.App.—Corpus Christi 1977, no writ).

*Applicability of Article 5536a*

 Applying the admonition in *Hill,* 555 S.W.2d at 149, that article 5536a is to be given "the most comprehensive and liberal construction possible," we conclude that the statute protects Fox & Jacobs. Although Fox & Jacobs clearly was not a registered or licensed engineer or architect and, consequently, not protected by section 1, *see Ellerbe v. Otis Elevator Co.,* 618 S.W.2d 870, 872 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), *appeal dismissed,* 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39, *reh'g denied,* 459 U.S. 1059, 103 S.Ct. 478, 74 L.Ed.2d 625 (1982), the exclusion of engineers and architects in

section 1 guides our construction of the phrase "any person performing or furnishing construction ... of any improvement" used in section 2.[1]

█ The statute was intended to apply to litigation against architects, engineers, and others involved in designing, planning or inspecting improvements to real property, as distinguished from materialmen and suppliers and from tenants and owners who possess or control the property. *See* Thompson, *When the Walls Come Tumbling Down—Article 5536(a): The Texas Architect and Engineer Statute of Limitation*, Texas Trial Lawyers Forum (October-December 1983). Thus, the critical inquiry is whether Fox & Jacobs' role in constructing the pool was more analogous to that of a builder or to an owner or supplier.

Fox & Jacobs fashioned general guidelines and hired a professional land developer to designate the location of the pool and create a conceptual layout. Although the guidelines did not specify dimensions, Fox & Jacobs approved the approximate dimensions selected by the land planner. A professional engineer under contract with Fox & Jacobs designed the pool, and approval by Fox & Jacobs of the final specifications was an indispensable prerequisite to construction of the facility. Fox & Jacobs solicited bids and hired a contractor to perform the actual construction. Fox & Jacobs supervised the construction process, inspected the pool upon completion, and found the workmanship "satisfactory."

Thus, although Fox & Jacobs did not design or construct the pool and although Fox & Jacobs was the nominal owner of the pool at the time of construction, the summary judgment evidence establishes that Fox & Jacobs never intended to maintain possession or control of the facility. Fox & Jacobs intended to and did convey the pool to the Homeowners Association to attract prospective buyers to purchase property in the development. Thus, with respect to building the pool, Fox & Jacobs *functioned* not as an owner but as a builder or supervisor. By furnishing money, planners, engineers, and subcontractors for the construction of the pool, and by performing supervisory and inspection duties, Fox & Jacobs functioned as a "person performing or furnishing construction ... of ... [an] improvement."

Our holding is consistent with prior case law broadly construing the statute. In *Hill v. Forrest and Cotton, Inc.,* 555 S.W.2d 145, 149 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.), the court held that registered engineers operating as a corporation were amenable to the benefits of the statute. In *Ellerbe,* 618 S.W.2d at 872, the court held that the manufacturer of an elevator was a person performing or furnishing construction even though it did not install the elevator in the building. In *Skeen v. Monsanto Co.,* 569 F.Supp. 232, 233 (S.D.Tex.1983), the court held that the plain language of the statute manifests a legislative intention to include within its purview persons who design, plan, or inspect improvements to real property.

█ The dissent champions McCulloch's argument that each cause of action is predicated on the *conveyance* of the pool rather than on its construction. The same argument could be made anytime to defeat the protection of article 5536a: an architect sells his plans, an engineer his design, and a homebuilder his house. We hold that the immunity afforded by article 5536a may not be abolished by plaintiffs suing for "conveyance." Further, the Fifth Circuit in *Brown v. M.W. Kellogg Co.,* 743 F.2d 265, 268 (5th Cir.1984), held that the sale of technology or concepts constitutes designing, planning, or constructing an improvement to real property:

This interpretation urged by appellants is a narrow technical one which, if accepted, would render the statute effectively

---

**1.** Section 1 was approved on June 2, 1969, effective September 1, 1969. Limitation of Actions Against Architects and Engineers, ch. 418, § 1, 1969 Tex.Gen.Laws, Local & Spec. 1379. Section 2 was added May 20, 1975, effective September 1, 1975. Limitations—Improvements to Real Property, ch. 269, § 1, 1975 Tex.Gen.Laws, Local & Spec. 649.

meaningless, for it is the ideas and concepts of engineers and the technology incorporating them, which, upon embodiment in construction, make their services valuable.

Accordingly, we hold that the summary judgment evidence establishes as a matter of law that article 5536a bars commencement and prosecution of each of McCulloch's causes of action.

### Constitutionality

McCulloch argues that article 5536a violates federal and state due process and equal protection clauses and the Texas open courts provision. We do not agree. We follow our sister courts of appeal and reject McCulloch's due process and equal protection challenges raised under the state constitution. *Sowders v. M.W. Kellogg Co.*, 663 S.W.2d 644, 648–49 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Ellerbe v. Otis Elevator Co.*, 618 S.W.2d 870, 873 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), *appeal dismissed for want of substantial federal question*, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 (1982); *Hill v. Forrest and Cotton, Inc.*, 555 S.W.2d 145, 149 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.). *See* Annot., 25 A.L.R.4th 641 (1983); Annot. 93 A.L.R.3d 1242 (1979).

In *Ellerbe*, the court of appeals rejected plaintiff's arguments that the statute violated federal due process and equal protection provisions, and the Texas supreme court dismissed the writ with the notation "no reversible error." The United States Supreme Court dismissed the case for want of a substantial federal question, a decision on the merits binding this court. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975). *See Hasty v. Rust Engineering Co.*, 726 F.2d 1068, 1070 (5th Cir.1984). Accordingly, we overrule all points of error alleging deprivation of substantive due process of law or denial of equal protection of the law.

Finally, McCulloch argues that article 5536a violates the open courts provision of the Texas Constitution: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX.CONST. art. I, § 13. McCulloch contends that article 5536a unconstitutionally divests him of a cognizable cause of action because it bars a remedy before an injury is sustained, discovered, or reasonably could have been discovered. We disagree.

A statute is presumed valid: "It is to be presumed that the Legislature has not acted unreasonably or arbitrarily; and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable." *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983), *quoting Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968). *See also McGowan v. Maryland*, 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–1105, 6 L.Ed.2d 393 (1961); *County of Cameron v. Wilson*, 160 Tex. 25, 326 S.W.2d 162, 165 (1959). The burden of demonstrating invalidity rests on the party assailing the statute. *Robinson v. Hill*, 507 S.W.2d 521, 524 (1974); *Smith v. Craddick*, 471 S.W.2d 375, 378 (1971).

The open courts provision is a facet of due process and ensures that Texas citizens bringing a common law cause of action will not unreasonably be denied access to the courts. *Nelson v. Krusen*, 678 S.W.2d 918, 922 (Tex.1984); *Sax*, 648 S.W.2d at 664; *Hanks v. City of Port Arthur*, 121 Tex. 202, 48 S.W.2d 944, 945 (1932). The section does not create new rights but is a "declaration of a general fundamental principle that for such wrongs as are recognized by the law of the land, the courts shall be open and afford a remedy." *Ellerbe*, 618 S.W.2d at 873; *In the Interest of B M N, a child*, 570 S.W.2d 493, 498 (Tex.Civ.App.—Texarkana 1978, no writ).

A statute that unreasonably abridges a justiciable right to obtain redress for injuries caused by wrongful acts of another is void as violative of the open courts provision. *Sax*, 648 S.W.2d at 665.

The right to bring a well-established common-law cause of action cannot be abrogated by the legislature absent a showing that the legislative basis for the statute outweighs the denial of a constitutionally guaranteed right of redress. 648 S.W.2d at 665–66. Thus, an aggrieved litigant must show that a cognizable common-law cause of action is being restricted and that the restriction, balanced against the purpose of the statute, is unreasonable or arbitrary. 648 S.W.2d at 666.

Article 5536a, a statute of repose, represents a legislative response to the inadequacy of traditional statutes of limitation. *Sowders v. M.W. Kellogg Co.*, 663 S.W.2d 644, 647 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). The time period begins to run when the improvement is substantially completed rather than when the cause of action accrues or is discovered. Although the parties apparently agree that granting repose to construction professionals is a permissible objective, they disagree as to whether the means adopted is rationally related to the objective.

■■■ McCulloch argues, first, that article 5536a is inherently defective because it is not, like a statute of limitation, a procedural remedy but a substantive deprivation of his right to redress. We disagree. A cause of action does not vest until an injury occurs; no one has a vested right in any common-law rule, and the right to bring a common-law action is not a fundamental right. *Regents of the University of California v. Hartford Accident and Indemnity Co.*, 131 Cal.Rptr. 112 (Ct.App. 1976); *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 213 (1981). Thus, the legislature may create new rights or abolish old ones to attain a permissible legislative objective. *Silver v. Silver*, 280 U.S. 117, 122, 50 S.Ct. 57, 58, 74 L.Ed. 221 (1929); *Sowders*, 663 S.W.2d at 648; *Ellerbe*, 618 S.W.2d at 873; *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662, 667 (1972); *Freezer Storage*, 476 Pa. 270, 382 A.2d 715, 718 (1978). No one "has a vested right in the continued existence of an immutable body of ... law...."

[T]he practical result of a [contrary] conclusion would be stagnation of the law in the face of changing societal conditions." *Freezer Storage*, 382 A.2d at 720, *quoting Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897, 903 (1975).

■■■ To determine whether the legislative purpose outweighs interests protected by the constitutionally guaranteed right of redress, we consider the general purpose of the statute and the extent to which the litigant's right to redress is affected. *Sax*, 648 S.W.2d at 666. *See also Harrison v. Schrader*, 569 S.W.2d 822, 827 (Tenn.1978). The statute demonstrates legislative recognition of the protracted and extensive vulnerability to lawsuit of architects, engineers, and others within its purview. *Harrison*, 569 S.W.2d at 827. As a result of judicial erosion of the privity of contract defense and judicial adoption of the discovery rule for accrual of a cause of action, construction professionals are subjected to expanded liability and, consequently, escalation of insurance rates. *Cudahy Co. v. Ragnar Benson, Inc.*, 514 F.Supp. 1212, 1217 (D.Colo.1981); *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662, 664–66 (1972); 18 Cath.U.L.Rev. 361 (1969).

■■■ Further, the construction professional exercises little, if any, control over the property once the construction is complete. Unlike landowners or possessors who can avoid liability by caring for the premises and regulating conditions of entry onto the land, the construction professional has no right to enter to inspect the premises. Additionally, as time passes, records are lost or disposed of, witnesses die or move away, and proof of causation becomes more difficult. The possibility of third-party neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair increases. *See, e.g. Cudahy Co.*, 514 F.Supp. at 1217; *Burmaster v. Gravity Drainage District No. 2*, 366 So.2d 1381 (La.1978); *Anderson v. Fred Wagner & Roy Anderson, Jr., Inc.*, 402 So.2d 320, 324 (Miss.1981); *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715, 718 (1978). Thus, bal-

ancing the legislative purpose against individual interests, we conclude that the ten-year ceiling is a reasonable means of addressing these issues and of enabling construction professionals and their insurance carriers to calculate probable liability without unreasonably compromising the right of an injured party to bring a cause of action. *See Hawkins v. D & J Press Co., Inc.*, 527 F.Supp. 386, 389 (E.D.Tenn.1981).

In *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984) (on motion for rehearing), the supreme court held that the statute of limitations for actions arising out of medical malpractice, TEX.INS.CODE ANN. art. 5.82, § 4 (repealed) (current version at TEX.REV.CIV.STAT.ANN. art. 4590i, § 10.01) (Vernon Supp.1985),[2] was unconstitutional as violative of the open courts provision to the extent that it abrogated a cause of action before the plaintiff knew or could have known of any injury. Although the court used broad language, it expressly reaffirmed the *Sax* balancing test. *Krusen*, 678 S.W.2d at 922.

Further, the facts of the instant case are distinguishable from *Krusen*. First, as noted in *Nelson v. Metallic—Braden Building Co.*, No. 01–85–0029–CV (Tex.App.—Houston [1st Dist.], May 23, 1985) (not yet reported), article 5536a does not vitiate appellant's right to redress for injuries sustained because appellant may have a viable claim for damages against the owner or lessee or operator of the swimming pool. Secondly, the medical malpractice provision addressed in *Krusen* was a typical statute of limitations, barring actions not filed within two years of the breach or tort or the date of the medical treatment or hospitalization regardless of the date of discovery. The court held that the statute unconstitutionally barred a *vested* right of action. McCulloch, on the other hand, sustained injuries *after* the expiration of the statutory period. Further, the ten-year limit is substantially more protective of individual rights than the two-

year limit held unconstitutional in *Krusen*. Consequently, we hold, consistently with *Sax* and *Krusen*, that article 5536a does not violate the open courts provision. Accordingly, we overrule all points of error and affirm.

GUITTARD, C.J., and AKIN, CARVER, VANCE, ALLEN, WHITHAM, MALONEY, DEVANY and McCLUNG, JJ., join in the majority opinion.

GUILLOT, J., dissents, joined by HOWELL, J.

STEPHENS, J., not participating.

GUILLOT, Justice, dissenting.

I respectfully dissent, and point out that this is an appeal from a summary judgment in which the trial court held that the statute of limitations provided for in TEX. REV.CIV.STAT.ANN. art. 5536a (Vernon Supp.1985) was applicable to a residential developer.

Reduced to their minimum, the facts reveal that Fox & Jacobs constructed a residential development called Greenwood Hills. The development included a community swimming pool, built in 1961, and designed by an independent planner along guidelines furnished by Fox & Jacobs. Fox & Jacobs had previously constructed other residential developments with swimming pools which were conveyed at no cost to the Homeowners' Association in those developments. Fox & Jacobs asserted in the trial court and on appeal that it did not participate in the construction of the pool, but did supervise and inspect its construction. It did, however, convey the pool to the Homeowner's Association at no cost. Some eighteen years later, McCulloch dived into the shallow end of the pool and severed his spinal cord.

McCulloch sued Fox & Jacobs for negligence and in strict liability. The trial court, interpreting the statute of limita-

---

2. Act of June 3, 1975, ch. 330, § 1, 1975 Tex. Gen.Laws, Local and Spec. 864, *repealed by* Medical Liability and Insurance Improvement

Act, ch. 817, pt. 4, § 41.03, 1977 Tex.Gen.Laws, Local and Spec. 2039, 2064.

tions contained in TEX.REV.CIV.STAT. ANN. art. 5536a (Vernon's Supp.1985) as applying to Fox & Jacobs, granted summary judgment. Properly viewed, the issue before this court is whether the statute is to be applied to residential developers who are sued in strict liability for *conveying* a defective product. I would hold that it is not to be so applied.

The statute of limitations provides:

*Art. 5536a. Architects, engineers and persons performing or furnishing construction or repair of improvement to real property*

Section 1. There shall be commenced and prosecuted within ten years after the substantial completion of any improvement to real property or the commencement of operation of any equipment attached to real property, and not afterward, all actions or suits in court for damages for any injury, damages or loss to property, real or personal, or for any injury to a person, or for wrongful death, arising out of the defective or unsafe condition of any such real property or any equipment or improvement attached to such real property, for contribution or indemnity for damages sustained on account of such injury, damage, loss or death against any registered or licensed engineer or architect in this state performing or furnishing the design, planning, inspection of construction of any such improvement, equipment or structure or against any such person so performing or furnishing such design, planning, inspection of construction of any such improvement, equipment, or structure; provided, however, if the claim for damages, contribution or indemnity has been presented in writing to the registered or licensed engineer or architect performing such services within the ten-year period of limitation, said period shall be extended to include two years from the time such notice is presented.

Sec. 2. There shall be commenced and prosecuted within ten years after the substantial completion of any improvement to real property, and not afterward, all actions or suits in court for damages

for any injury, damages, or loss to property, real or personal, or for any injury to a person, or for wrongful death, or for contribution or indemnity for damages sustained on account of such injury, damage, loss, or death arising out of the defective or unsafe condition of any such real property or any deficiency in the construction or repair of any improvements on such real property against any person performing or furnishing construction or repair of any such improvement; provided, however, if the claim for damages, contribution or indemnity has been presented in writing to the person performing such services within the ten-year period of limitation, said period shall be extended to include two years from the time such notice in writing is presented, or if said injury, damage, loss, or death occurs during the tenth year, all actions or suits in court may be brought within two years from the date of such injury, damage, loss, or death; and provided further, however, this section shall not apply and will not operate as a bar to an action or suit in court (a) on a written warranty, guaranty, or other contract which expressly is effective for a period in excess of the period herein prescribed; (b) against persons in actual possession or control of the real property as owner, tenant, or otherwise at the time the injury, damage, loss, or death occurs; (c) based on willful misconduct or fraudulent concealment in connection with the performing or furnishing of such construction or repair. Nothing in this section shall be construed as extending or affecting the period prescribed for the bringing of any action under Articles 5526, 5527, and 5529, Revised Civil Statutes of Texas, 1925, or any other law of this state.

We are bound by the clear language of the statute. *Railroad Commission of Texas v. Miller*, 434 S.W.2d 670, 672 (Tex.1968). Neither party asserts that the statute is ambiguous; thus, the rules of statutory construction of an ambiguous statute are inappropriate. *Cail v. Service Motors,*

*Inc.*, 660 S.W.2d 814, 815 (Tex.1983). Therefore, we must determine its intent from its language and not elsewhere. *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920). In short, we look to the entire statute in determining the legislature's intent. *Taylor v. Firemen's & Policemen's Civil Service Commission of the City of Lubbock*, 616 S.W.2d 187, 190 (Tex. 1981).

Confining ourselves to the statutory language, we should first observe that the heading of the statute plainly applies to "architects, engineers and persons performing or furnishing construction or repair of improvement to real property." The Houston Court of Civil Appeals [1st Dist.] has held that the statute *is limited* to registered architects and engineers, and to any person performing or furnishing construction or repair of any improvements on real property. *Ellerbe v. Otis Elevator Company*, 618 S.W.2d 870, 872 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.), *appeal dism'd*, 459 U.S. 802, 103 S.Ct. 24, 74 L.Ed.2d 39 *reh'd denied*, 459 U.S. 1059, 103 S.Ct. 478, 74 L.Ed.2d 625 (1982).

The body of the statute does not expand on the scope of what is contained in the title. It simply says that suits against architects, engineers, or any person performing or furnishing the design, planning, construction, or inspection of the improvement must be brought within ten years after the substantial completion of any improvement. It is clear from the statute, and I would hold that a cause of action must arise out of the design, planning, inspection, construction, or repair of an improvement to real property.

The record shows, and the majority agrees, that Fox & Jacobs is not a registered architect or engineer. Therefore, section 1 of the statute does not apply to Fox & Jacobs. Section 2 of the statute clearly applies to persons "performing or furnishing construction or repair" of the swimming pool. Because this is a summary judgment case, the court must first decide if there is no fact issue as to whether Fox & Jacobs performed or furnished the construction of the swimming pool. (There is no allegation that it was repaired.) Furthermore, even if the majority were correct that Fox & Jacobs furnished the construction of the pool, the court must then determine if Fox & Jacobs is being sued for furnishing the construction of the pool. I would hold that there are fact issues as to whether Fox & Jacobs furnished construction of the pool and that, even if there were no fact issues on that question, McCulloch's cause of action is not barred by the statute because he is not suing Fox & Jacobs for furnishing the construction of the pool, but rather for conveying a pool which was not fit for the purposes for which it was intended.

As to whether Fox & Jacobs furnished the construction of the pool, there must be no disputed fact issues. But the record reveals a fact issue on this point. There are affidavits and deposition testimony by Fox & Jacobs that it did not construct the pool. There is a motion for summary judgment in which Fox & Jacobs states it "had nothing to do with the construction of the swimming pool." Moreover, Fox & Jacobs contends in a counterpoint that the pool was constructed by an independent contractor. I would hold that by its own motion, testimony, affidavits, and judicial admissions, Fox & Jacobs has raised a fact question precluding summary judgment.

Even if Fox & Jacobs furnished the construction of the pool, I would hold that Fox & Jacobs is not insulated from liability by TEX.REV.CIV.STAT.ANN. art. 5536a (Vernon Supp.1985) because it was not sued by McCulloch for furnishing the *construction* of the swimming pool, but rather for *conveying* a defective pool. Section 2 of the statute is limited to persons performing or furnishing construction of any improvements on real property. *Ellerbe*, 618 S.W.2d at 872. The question, therefore, is whether McCulloch's causes of action arise out of Fox & Jacobs' furnishing the construction of the pool. The pleadings reveal that Fox & Jacobs was sued for negligently conveying a pool without adequate warning

and for conveying a pool that was not fit for the purposes for which it was intended. In each of these causes of action, Fox & Jacobs could incur liability without regard to who may have constructed the pool. Its alleged liability is similar to middlemen in products liability cases. *Cf. McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex. 1967).

It may be argued that Fox & Jacobs cannot be liable under McCulloch's theory of recovery for strict liability because it did not sell the pool and is not, therefore, a seller as that term is used in the Restatement (Second) of Torts § 402A (1965). The Restatement sets forth the liability of a seller as follows:

§ 402A. *Special Liability of Seller of Product for Physical Harm to User or Consumer*

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

While at first blush it would appear that a sale must take place for strict liability to commence, neither the comment to the Restatement (Second) of Torts nor case law support this analysis. Comment f points out the following:

The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged *solely in the business of selling such products.* Thus the rule applies to the owner of a motion picture theater who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home.

The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam or a pound of sugar. (emphasis added).

Cases interpreting section 402A have held that it applies to one who does not sell a product but who does introduce it into the stream of commerce or participates in any stage of the distribution of goods. In *McKisson*, 416 S.W.2d 787, a defective hair preparation was given as a sample to Mrs. McKisson, and the distributor, Sales Affiliates Inc., was held liable for strict liability in tort. The supreme court held that one who delivers for advertising purposes a sample "with the expectation of profiting therefrom through future sales is in the same position as one who sells the product." 416 S.W.2d at 792.

In our case, Fox & Jacobs Inc. delivered the swimming pool as an advertising promotion to sell houses in the development. I would hold that there is no difference for strict liability purposes between such a delivery and the delivery of defective hair preparation.

In *Armstrong Rubber Company v. Urquidez*, 570 S.W.2d 374 (Tex.1978), Armstrong Rubber Company supplied tires in a bailment for mutual benefit to a test-driving facility. Urquidez was killed as a result of a defective tire. The supreme court held that a sale of the tire was not necessary for strict liability to apply. It did hold that the defendant must be engaged in introducing the product into the channels of commerce. In distinguishing other juris-

dictions which extended strict liability to bailment transactions, the court noted that the bailments arose in transactions "essentially commercial in character." *Armstrong Rubber Company*, 570 S.W.2d at 377. Some of the cases cited were *Whitfield v. Cooper*, 30 Conn.Supp. 47, 298 A.2d 50 (1972); *Nawakowski v. Hoppe Tire Co.*, 39 Ill.App.3d 155, 349 N.E.2d 578 (1976); *Fulbright v. Klamath Gas Co.*, 271 Or. 449, 533 P.2d 316 (1975). The facts show that the conveyance of the swimming pool by Fox & Jacobs was essentially commercial in character. I would hold that McCulloch has stated a cause of action in strict liability notwithstanding the fact that Fox & Jacobs did not sell the pool.

The application of the doctrine of strict liability to Fox & Jacobs is further justified by the reasons for invoking the doctrine in the first place. First, it provides maximum protection for the user; and second, the marketing enterprise is in a better position to insure against liability by adding the cost of insurance to the price of the product. *See Barth v. B.F. Goodrich Tire Company*, 265 Cal.App.2d 228, 71 Cal.Rptr. 306, 321 (1968).

I would hold that article 5536a does not apply to a cause of action in strict liability that is unrelated to the design, construction, or inspection of improvements to real property.

The majority goes to great effort to try to show that Fox & Jacobs acted more like a builder of a pool than an owner or supplier. The effort is wasted for several reasons. As stated above, Fox & Jacobs eschews any connection to the building of the swimming pool; it is not being sued for furnishing the construction of the pool; and finally, because this is a summary judgment case it is immaterial whether Fox & Jacobs acted more as a builder than as an owner. There must be no fact issue on how Fox & Jacobs acted. Reading the majority opinion one would think that the jury found against McCulloch on this issue. But there was no trial in this case because summary judgment was rendered against McCulloch.

I feel compelled to point out that the cases cited by the majority for its proposition that the statute is applicable are not on point. In *Ellerbe*, the court held that a person who builds an elevator to be installed in an office building is a "person performing or furnishing the construction of the elevator." *Ellerbe*, 618 S.W.2d at 872. In the instant case, Fox & Jacobs did not build the pool. In *Hill v. Forrest and Cotton, Inc.*, 555 S.W.2d 145 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.), the court rejected Hill's contention that because Forrest and Cotton was a corporation, it was not a registered engineer within the meaning of the statute. Here Fox & Jacobs are not registered engineers. In *Skeen v. Monsanto Co.*, 569 F.Supp. 232 (S.D.Tex. 1983), the court dealt with a suit against a registered engineer for defective design. It was not a suit against a person furnishing construction, much less a suit for strict liability in tort. In *Brown v. M.W. Kellogg Co.*, 743 F.2d 265 (5th Cir.1984), the suit was against registered engineers for the sale of technology or concepts. There the court held that the ideas or designs of engineers are what makes their service valuable. The instant case is not a suit against registered engineers for the sale of their ideas, but against a developer who conveys a defective product.

Because I would sustain McCulloch's second point of error, there is no need to address his points on the constitutionality of the statute.

HOWELL, J., joins the dissent.