**Reversed and Remand and Opinion Filed June 10, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00539-CV

**GARY LEW MAYPOLE, SR., Individually and as Personal Representative of the Estate of Gary Lew Maypole II, Deceased, and TAMARA JEAN MAYPOLE, as Next Friend of H.K.M. and D.T.M., Minors, Appellants**

**V.**

**ACADIAN AMBULANCE SERVICE, INC. and ACADIAN AMBULANCE SERVICE OF TEXAS, LLC, Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-11335**

## EN BANC OPINION
Before the Court sitting En Banc[1]
Opinion by Justice Molberg

---

[1] In this case, the en banc Court consists of the following: (1) all of the current justices of the Court except the Hon. Bonnie Lee Goldstein, who did not participate in the issuance of this opinion, and (2) the Hon. David Evans, whose term expired but who remains eligible for assignment to the Court. *See* TEX. R. APP. P. 41.2(a). A panel consisting of the Hons. Robbie Partida-Kipness, Cory Carlyle, and David L. Bridges, who died on July 25, 2020, issued the August 21, 2019 judgment. The Hon. John G. Browning succeeded Justice Bridges and sat when the case was submitted en banc, along with the en banc members and the Hon. Bill Whitehill. As Justices Whitehill and Browning's terms have since expired and they are no longer eligible for assignment to the Court, they have not participated in the issuance of this opinion.

On appellants' motion for rehearing en banc, we withdraw our opinion dated August 21, 2019, and vacate the judgment of that date.

This is now the opinion of the Court.

Gary Lew Maypole, Sr., individually and as personal representative of the estate of Gary Lew Maypole II (Gary), and Tamara Jean Maypole, as next friend of Gary's two minor children—H.K.M. and D.T.M.—(collectively, the Maypoles), appeal the trial court's traditional summary judgment in favor of Acadian Ambulance Service, Inc. and Acadian Ambulance Service of Texas, LLC (collectively, Acadian). On appeal, the Maypoles argue the trial court erred in granting summary judgment because (1) Acadian failed to conclusively establish their medical authorization did not substantially comply with Chapter 74 of the Texas Civil Practice and Remedies Code,[2] rendering their claims barred by the statute of limitations, and (2) in any case, abatement—and not dismissal—was the appropriate remedy for any alleged omissions in the medical authorization.

We reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.

## BACKGROUND

According to the Maypoles and their medical expert, Ralph Terpolilli, M.D., forty-nine-year-old Gary died because critical-care-transport personnel of Acadian

---

[2] TEX. CIV. PRAC. & REM. CODE §§ 74.001–.507.

"failed to perform endotracheal suctioning of [Gary's endotracheal] tube in a competent manner by leaving [a] suction catheter fully inserted inside the [endotracheal] tube" during a medical transport on July 20, 2015. The transport team's failure "to recognize[] and correct this error in a timely manner was directly responsible for [Gary's] clinical deterioration to a hypoxic, bradycardic, cardiac arrest with resultant anoxic brain injury and death." In Dr. Terpolilli's opinion, Acadian's actions and inactions during the transport constituted "a wide departure from" the applicable standard of care.

On July 12, 2015—some eight days before the events described above—Gary was admitted to Texas Regional Medical Center in Sunnyvale, Texas,[3] for shortness of breath related to long-term heart failure. Gary's condition deteriorated, and his transfer was arranged from the intensive care unit at Texas Regional Medical Center to the Heart Hospital Baylor Plano (Heart Hospital) for surgery evaluation. On July 20, 2015, Acadian transported Gary to the Heart Hospital intensive care unit where "he was transitioned from Acadian critical care equipment to Baylor equipment." Gary suffered cardiac arrest but was resuscitated; however, he suffered an anoxic brain injury that prevented cardiac surgery. Gary's family subsequently withdrew life support, and he was pronounced dead on July 23, 2015. What occurred during

---

[3] By the time of the lawsuit, and according to the record, Texas Regional Medical Center was known as Baylor Scott & White Medical Center–Sunnyvale.

–3–

the twenty-nine-mile July 20, 2015 Acadian ambulance ride forms the basis of the Maypoles' health care liability claims.

On August 30, 2017, appellants—Gary's father and two minor children, H.K.M. and D.T.M.—filed this wrongful death and survival action alleging health care provider negligence by Acadian.[4]  Appellants attached Dr. Terpolilli's report to their original petition, stating they intended it to constitute service of the expert report required to be served on Acadian under section 74.351 of the Texas Medical Liability Act (TMLA).  TEX. CIV. PRAC. & REM. CODE § 74.351(a).[5]

On June 12, 2017—more than sixty days before filing suit—appellants provided pre-suit notice-of-claim to Acadian by certified mail, return receipt requested, accompanied by an authorization for the release of Gary's health care information, both of which are required by the TMLA.  *See id.* §§ 74.051, 74.052. The TMLA specifies, "Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice, and this tolling shall apply to all parties and potential parties."

---

[4] Originally, Heart Hospital and Baylor Scott & White Health also were named as defendants.  They later were non-suited.

[5] After some delay, Acadian was served on October 9, 2017.  Acadian's original answer was filed on October 16, 2017.  By attaching Dr. Terpolilli's report to the petition, appellants gave Acadian four extra months to review the report than Acadian was entitled to under the TMLA.  Acadian filed no timely objections to Dr. Terpolilli's report.  *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a).  Significantly for purposes of this case, the report provides a narrative of Gary's past medical and surgical history, including congestive heart failure.

*Id.* § 74.051(c). It was during the extended limitations period that appellants filed suit.

After filing an answer to the lawsuit, and after the extended limitations period expired, Acadian filed an initial and then an amended motion for traditional summary judgment, claiming appellants' case should end without being heard on the merits because the medical authorization appellants served with their timely pre-suit notice was deficient. This deficiency, Acadian argued, deprived the Maypoles of the extended filing period.

On March 5, 2018, the Maypoles filed a response to Acadian's summary judgment motion. They asserted their medical authorization was "substantially compliant" with Chapter 74; the authorization did not prevent Acadian from obtaining Gary's medical records; all known healthcare providers were identified in the authorization; and this Court's decision in *Mock v. Presbyterian Hospital of Plano*, 379 S.W.3d 391, 394–95 (Tex. App.—Dallas 2012, pet. denied), supported their contention that their medical authorization was sufficient to support the tolling of limitations. On April 10, 2018, the trial court entered summary judgment in favor of Acadian on the ground the Maypoles' claims were barred by limitations. This appeal followed.

**STANDARD OF REVIEW**

We review de novo the trial court's ruling on a motion for summary judgment. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In a traditional motion for summary judgment, the movant must establish that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). The motion must state the specific grounds relied upon for summary judgment. *Id.* A genuine issue of material fact exists if the nonmovant produces more than a scintilla of probative evidence regarding the challenged element. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish all elements of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and resolve any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661.

**APPLICABLE LAW**

Health care liability claims in Texas are governed by the Texas Medical Liability Act (TMLA), a statute designed "to eliminate frivolous healthcare-liability claims, while allowing potentially meritorious claims to proceed." *See Hebner v. Reddy*, 498 S.W.3d 37, 39 (Tex. 2016) (describing this as the TMLA's "purpose").

Health care liability claims have a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 74.251(a). The statute of limitations commences from the occurrence of the breach or tort; the last date of the relevant course of treatment; or the last date of the relevant hospitalization. *Mitchell v. Methodist Hosp.*, 376 S.W.3d 833, 835 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A plaintiff, however, may obtain a seventy-five-day tolling period by complying with certain statutory notice requirements.

To allow a defendant physician or health care provider in a health care liability case to obtain medical information from health care providers, the TMLA requires plaintiffs to accompany their mandatory pre-suit notice of their claim with an authorization for the release of the claimant's medical records to each defendant against whom a claim is made. TEX. CIV. PRAC. & REM. CODE § 74.051. If the plaintiff provides both the notice and medical authorization under section 74.051, the two-year limitations period is tolled for a period of seventy-five days. *Id.* § 74.051(a), (c); *see also Carreras v. Marroquin*, 339 S.W.3d 68, 74 (Tex. 2011) ("[F]or the statute of limitations to be tolled in a health care liability claim pursuant to Chapter 74, a plaintiff must provide both the statutorily required notice and the statutorily required authorization form."). Section 74.051 provides, in relevant part:

> Any person or his authorized agent asserting a health care liability claim shall give written notice of such claim by certified mail, return receipt requested, to each physician or health care provider against whom such claim is being made at least 60 days before the

> filing of a suit in any court of this state based upon a health care liability claim. The notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052.

TEX. CIV. PRAC. & REM. CODE § 74.051(a).

The purpose of the pre-suit notice and medical authorization requirement is "'to encourage the parties to negotiate and settle disputes *prior to* suit.'" *Hebner*, 498 S.W.3d at 42 (quoting, with added emphasis, *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 189–90 (Tex. 2012)); *Carreras*, 339 S.W.3d at 73 ("The Legislature intended that 'by requiring a potential claimant to authorize the disclosure of otherwise privileged information sixty days before suit is filed, the statute [would] provide[ ] an opportunity for health care providers to investigate claims and possibly settle those with merit at an early stage.'") (quoting *In re Collins*, 286 S.W.3d 911, 916–17 (Tex. 2009) (orig. proceeding)). If the plaintiff fails to furnish any medical authorization at all within the limitations period, tolling is unavailable. *Carreras*, 339 S.W.3d at 72 ("If the authorization does not accompany the notice, then the benefit of the notice—tolling—may not be utilized.").

The substance of the medical authorization is addressed in section 74.052. TEX. CIV. PRAC. & REM. CODE § 74.052. Titled "Authorization Form for Release of Protected Health Information," section 74.052 provides, in part:

> Notice of a health care claim under Section 74.051 must be accompanied by a medical authorization in the form specified by this section. Failure to provide this authorization along with the notice of health care claim shall abate all further proceedings

–8–

> against the physician or health care provider receiving the notice until 60 days following receipt by the physician or health care provider of the required authorization.

*Id*. § 74.052(a).

Section 74.052(c) states "the medical authorization required by this section shall be in the following form" and includes the form's specific text, along with several blanks to be filled in with information specific to the claimant's claim. *Id*. § 74.052(c). The seventy-five-day tolling period is triggered if the plaintiff gives notice "as provided" in Chapter 74. *Id*. § 74.051(c) ("Notice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice[.]").

## ANALYSIS

The central question before us is whether the medical authorization attached to the Maypoles' pre-suit notice tolled the limitations period under section 74.051(c). While it is undisputed that the Maypoles filed suit more than two years after their cause of action accrued, this tells us nothing about whether the limitations period had expired for H.K.M. and D.T.M., who were minors,[6] and still leaves us with the question of whether the limitations period was tolled under section 74.051(c).

---

[6] Although this issue was not raised by appellants, we note the record does not show whether the claims of H.K.M. and D.T.M., Gary's minor children, were dismissed properly because there is no evidence of their ages and thus no way to tell whether limitations had expired, either with or without the 75-day tolling provision. The minor children's claims are not governed by the same two-year statute of limitations that governs the claims of the estate or Gary's father. While section 74.251(a) states that "minors under the age of 12 . . . have until their 14th birthday in which to file . . . the claim," TEX. CIV. PRAC. & REM. CODE

The Maypoles argue section 74.051(c)'s seventy-five-day tolling provision applies because their medical authorization form substantially complied with section 74.052. According to the Maypoles, their authorization "allowed access to [Gary's] otherwise-confidential medical records from his treatment at Texas Regional Medical Center in Sunnyvale and The Heart Hospital in Plano."

Acadian, on the other hand, contends the authorization is fatally flawed because, although it allowed access to the records of these two entities, it failed to list any providers who treated Gary in the five years preceding "the incident made the basis of the accompanying Notice of Health Care Claim," and it failed to identify the physicians to whom the authorization did not apply.[7] Pointing to an affidavit attached to the Maypoles' original petition, Acadian contends Gary had a "past medical history of deep venous thrombosis, pulmonary embolism, factor 5 Leiden deficiency, congestive heart failure (CHF), and chronic back pain." Acadian cites

---

§ 74.251(a), that section is unconstitutional for minors. *See Adams v. Gottwald*, 179 S.W.3d 101, 103 (Tex. App.—San Antonio 2005, pet. denied) (holding TMLA § 74.251 limitations period unconstitutional for minors) (citing *Weiner v. Wasson*, 900 S.W.2d 316, 318 (Tex. 1995) (holding predecessor provision to § 74.251 unconstitutional); *Sax v. Votteler*, 648 S.W.2d 661, 667 (Tex. 1983) (same)). Moreover, once a minor reaches the age of majority, the limitations period may be tolled by pre-suit notice under section 74.051. *See Montalvo v. Lopez*, 466 S.W.3d 290, 294 (Tex. App.—San Antonio 2015, no pet.) (holding that the limitations period applicable to Lopez's claims was tolled by the pre-suit notice given under section 74.051(a)). Here, because there is no proof in the record of the age of either minor, it is unknown when limitations expired, or will expire, as to each of them.

[7] Acadian did not object in the trial court to any claimed deficiencies in appellants' medical authorization but simply waited until after the extended deadline to file suit had passed, then moved to dismiss the Maypoles' claims. Without offering summary judgment proof that the alleged omissions in the medical authorization seriously hindered its ability to carry out the legislative purpose of section 74.052, Acadian argued the alleged omissions rendered the authorization "wholly deficient and fatally defective," justifying summary judgment in its favor.

–10–

Gary's Heart Hospital admission record which, under the heading "History of Present Illness," lists "PCP—Dr. David Carlson, Cardiologist—Dr. Mohammed Khan, Pain management—Dr. Shaw" as treating physicians. Acadian argues the Maypoles were required to list these health care providers on their medical authorization in order to comply with section 74.052 and because they did not, their authorization did not toll the limitations period under section 74.051(c).

### This Court Is Beholden to Safeguard Texas Citizens' Right to a Trial by Jury

To say that it is no small matter to lock the courthouse doors to our citizenry is axiomatic. Indeed, the current form of the Texas Constitution, which has been in effect since 1876, safeguards the people's right to a trial by jury in two separate provisions: in Article I, section 15 of the constitution's Bill of Rights, and in Article V, section 10 of the constitution's Judiciary Article. Article I, section 15 stipulates, "The right of trial by jury shall remain inviolate." TEX. CONST. art. I, § 15. Article V, section 10 similarly mandates, "In the trial of all causes in the District Courts, the plaintiff or defendant shall, upon application made in open court, have the right of trial by jury . . . ." *Id.* art. V, § 10. These limitations likewise constrain the legislature. *Scoresby v. Santillian*, 346 S.W.3d 546, 554 (Tex. 2011).

Against this backdrop, we construe the TMLA—as courts construe all statutes—to encourage and safeguard constitutional rights and to protect the rights of claimants to file meritorious lawsuits. *See Samlowski v. Wooten*, 332 S.W.3d 404,

–11–

410 (Tex. 2011) (Medina, J.) (plurality op.); *id.* at 416 (Guzman, J., concurring);[8] *see also In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 468 (Tex. 2011) (orig. proceeding).

The TMLA and the Texas Supreme Court cases construing it did not develop in a vacuum. Like every other statute passed by the Texas legislature, the TMLA is symbiotic with the whole of our body of law comprising the Texas Constitution, the Texas Rules of Civil Procedure, and statutory and common law. "When determining the meaning, intent, and purpose of a law or constitutional provision," we may consider "the evils intended to be remedied," "the good to be accomplished," and "the history of the times out of which [the law or constitutional provision] grew, and to which it may be rationally supposed to bear some direct relationship." *Travelers' Ins. Co. v. Marshall*, 76 S.W.2d 1007, 1012 (Tex. 1934) (stating these "are proper subjects of inquiry"). To this end, a statute should not be construed in a spirit of detachment. Rather, we must consider the purpose of the statute. *See Scoresby*, 346 S.W.3d at 556–57. To determine whether the legislative purpose outweighs constitutionally guaranteed rights, we balance the general purpose of the statute with

---

[8] While *Samlowski* is a plurality opinion and not binding, in *Scoresby*, the supreme court followed the opinions and analysis on issues expressed in *Samlowski* with no apparent analytical conflict between the plurality opinion written by Justice Medina and the concurring opinion written by Justice Guzman. This Court already has elected to follow the opinions and analysis of *Samlowski* to the extent there is no apparent conflict between Justice Medina's plurality opinion and Justice Guzman's concurring opinion. *See Biggs v. Baylor Univ. Med. Ctr.*, 336 S.W.3d 854, 858–60 (Tex. App.—Dallas 2011, pet. denied). Although these cases address section 74.351(c) of the TMLA—concluding trial courts should err on the side of granting extensions of time to amend a Chapter 74 expert report—the TMLA's purpose of preserving meritorious claims while weeding out frivolous ones was critical to their analysis. *See Scoresby*, 346 S.W.3d at 554; *Samlowski*, 332 S.W.3d at 410; *Biggs*, 336 S.W.3d at 357–58. That purpose likewise is critical to our analysis in this case.

–12–

the extent to which a claimant's right to redress is affected. *McCulloch v. Fox & Jacobs, Inc.*, 696 S.W.2d 918, 924 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

The legislature's stated purpose in enacting the TMLA included "reduc[ing] excessive frequency and severity of health care liability claims," but doing so "in a manner that will not unduly restrict a claimant's rights." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1)–(3), Tex. Gen. Laws 847, 884; *CHCA Woman's Hosp., L.P. v. Lidji*, 403 S.W.3d 228, 232 (Tex. 2013). The TMLA strikes "a careful balance between eradicating frivolous claims and preserving meritorious ones." *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008); *see Hebner*, 498 S.W.3d at 39 (describing TMLA's purpose as "eliminat[ing] frivolous healthcare-liability claims, while allowing potentially meritorious claims to proceed"). To that end, we should construe section 74.052 in a way that "does the least damage to the statutory language, and best comports with the statute's purpose." *Hebner*, 498 S.W.3d at 43 (quoting *Zanchi v. Lane*, 408 S.W.3d 373, 379–80 (Tex. 2013)) (applying sections 74.051 and 74.353 of TMLA). Therefore, our interpretation of section 74.052 in this case must be mindful of appellants' constitutional due process rights. *See id.* ("[T]here are constitutional limitations upon the power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits of [her] cause,

and those limitations constrain the Legislature no less in requiring dismissal.")
(quoting *Scoresby*, 346 S.W.3d at 554).[9]

### Section 74.052 Does Not Require Disclosure of "All" Health Care Providers for Tolling of Limitations

When construing statutes, we begin with the statute's language. *Carreras*, 339 S.W.3d at 71. "We look to the plain meaning of the words in a statute as an expression of legislative intent." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015). We are mindful that we may not "judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam). Instead, in construing statutory language, "'we presume the Legislature chose the statute's language with care, purposefully choosing each word, while purposefully omitting words not chosen.'" *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 158–59 (Tex. 2021) (orig. proceeding) (quoting *In re Commitment of Bluitt*, 605 S.W.3d 199, 203 (Tex. 2020)); *see Lippincott*, 462 S.W.3d at 509 (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008)); *Leland*, 257 S.W.3d at 207 ("Leland's interpretation [of section 74.351(c) of the TMLA] would require us to read additional words into the

_____

[9] "[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex. 1991) (orig. proceeding) (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 209–10 (1958)); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705–06 (1982). *Cf.* TEX. CONST. art. I, § 13 (prohibiting unreasonable denial of court access to persons bringing common law claims and guaranteeing a remedy by due course of law).

–14–

statute . . . which we decline to do."). We further recognize "a fundamental principle of statutory construction that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used." *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 39 (Tex. 2018). Finally, "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564 (Tex. 2016) (citations omitted).

Here, section 74.052(c) states, in pertinent part:

B. The health information to be obtained, used, or disclosed extends to and includes the verbal as well as written and electronic and is specifically described as follows:

1. The health information and billing records in the custody of ***the physicians or health care providers*** who have examined, evaluated, or treated _____ (patient) in connection with the injuries alleged to have been sustained in connection with the claim asserted in the accompanying Notice of Health Care Claim.

***Names and current addresses of treating physicians or health care providers:***

1._____

[form lists 7 more spaces for lines starting with numbers 2 through 8]

. . . .

2. The health information and billing records in the custody of ***the following physicians or health care providers*** who have examined, evaluated, or treated _____ (patient) during a period commencing five years prior to the incident made the basis of the accompanying Notice of Health Care Claim.

*Names and current addresses of treating physicians or health care providers, if applicable:*

[form lists 7 more spaces for lines starting with numbers 2 through 8]

C. Exclusions

1. Providers excluded from authorization.

The following constitutes *a list of physicians or health care providers possessing health care information concerning _____ (patient) to whom this authorization does not apply* because I contend that such health care information is not relevant to the damages being claimed or to the physical, mental, or emotional condition of _____ (patient) arising out of the claim made the basis of the accompanying Notice of Health Care Claim. *List the names of each physician or health care provider* to whom this authorization does not extend and the inclusive dates of examination, evaluation, or treatment to be withheld from disclosure, *or state "none":*

1._____

[form lists 7 more spaces for lines starting with numbers 2 through 8]

TEX. CIV. PRAC. & REM. CODE § 74.052(c) (emphasis added).

The legislature could have required the medical authorization to list "all" physicians or health care providers but did not do so—not for those listed under part B.1. (physicians or health care providers who examined, evaluated, or treated the patient in connection with the injuries alleged to have been sustained in connection with the incident in the pre-suit notice) or part B.2. (providers who treated the patient in the five years prior to that incident) of the section 74.052(c) authorization form. The legislature could also have required the medical authorization to list "each" of those physicians or health care providers under parts B.1. or B.2., but the legislature

did not do that either, though it did require that for any of the physicians or health care providers listed as being excluded under part C.1. Thus, we must presume the word "all"—or any word of equivalent meaning—was purposefully omitted from those portions of section 74.052(c).[10]  *See In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d at 158–59; *Lippincott*, 462 S.W.3d at 509; *Leland*, 257 S.W.3d at 207; *see also Ineos USA*, 505 S.W.3d at 564 ("[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.").

But Acadian asks us, in effect, to do just the opposite and to read into section 74.052(c) a requirement the legislature declined to include.  Specifically, Acadian claims that tolling of limitations is unavailable if *any* of Gary's healthcare providers for the previous five years were omitted from appellants' medical authorization.  However, Chapter 74 does not include any such mandate.  Nowhere does Chapter 74 require a plaintiff to identify "all" healthcare providers, with no omissions whatsoever, for the tolling provision to apply.

---

[10] The version of section 74.052(c) of the TMLA applicable at the time these proceedings began specified the content of the authorization for the release of privileged health information.  This content included the names and addresses of health care providers who treated or examined the claimant for the injury made the basis of the claim; the names and addresses of health care providers who treated the claimant during the five years prior to the incident that is the basis of the claim; the names and addresses of health care providers to which the authorization did not apply; and the "patient's" name, place of birth, address, phone number, and e-mail.  TEX. CIV. PRAC. & REM. CODE § 74.052(c).  Effective Sept. 1, 2019, the legislature understandably removed "place of birth" from section 74.052(c) and replaced it with "date of birth."  The legislature apparently recognized an individual's place of birth ordinarily would have little to do with identifying a patient for purposes of the release of health care information.

Section 74.052 does not require the authorization to list "all" of the claimant's health care providers, whether current or for the preceding five years. This Court must take the statute as we find it and presume the legislature included the words it intended to include and omitted words—in this case "all" or "every"—it intended to omit. Indeed, it would be absurd and unreasonable to expect a plaintiff to know or remember—whether the patient was conscious, unconscious, medicated, or otherwise incapacitated (and in this case, deceased)—the identity of every person and entity that provided health care of any kind for the preceding five years, such as, for example, hospital technicians, nurse managers, nurse practitioners, specialty nurses, registered nurses, enrolled nurses, nurses' aides and assistants, nurse and other medical consultants, interns, residents, medical students and student doctors, fellows, on-call doctors, attending physicians, specialty doctors, dental hygienists, dietitians, occupational and other therapists, pharmacists, physiotherapists, clinical assistants, patient services assistants, and volunteers. *See Carreras*, 339 S.W.3d at 73 ("We [] interpret statutes to avoid an absurd result.")

We may not rewrite text enacted by the legislature. Therefore, we decline to require appellants' section 74.052 medical authorization to include "all" of Gary's physicians and health care providers when the statute includes no such requirement. *See In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d at 158–59; *Lippincott*,

–18–

462 S.W.3d at 508–09; *Leland*, 257 S.W.3d at 207; *see also Ineos USA*, 505 S.W.3d at 564.

### *Appellants Were Not Required to Authorize Acadian to Obtain Its Own Records*

On this record, we also decline to require that the authorization form specifically name Acadian. In its amended summary judgment motion and on appeal, Acadian argued that appellants' authorization was deficient because it "only disclosed Co-Defendants The Heart Hospital Baylor Plano and Baylor Scott & White Health as Decedent's health care providers." In other words, Acadian complained that appellants failed to list Acadian for purposes of authorizing Acadian to obtain its own records—records it already possessed and used generously in support of its motions for summary judgment.

We reject this argument as nonsense on the record before us. Acadian had its own records and knew it needed no authorization to access them. An authorization for those records would have been largely superfluous; the record does not show that appellants' failure to list Acadian in the authorization materially interfered with, or seriously hindered, any investigation or attempt by Acadian to negotiate a resolution of appellants' claims—the essential purpose of the TMLA's medical authorization requirement.

***Leaving a Line Blank Instead of Stating "None"***
***Is Non-Substantive and Is No Omission At All***

We also reject Acadian's argument that appellants' authorization was deficient because it failed to identify the health care providers "to which [the] authorization does not apply" and instead left blank the portion of the authorization described in part C.1. of the section 74.052(c) form. By its plain text, section 74.052(c) allows an authorization to list "the names of each physician or health care provider to whom [the] authorization does not apply" "or [to] state 'none.'" By any common-sense reading, leaving a blank in such a circumstance is the equivalent of stating "none." Therefore, Acadian did not conclusively establish that appellants' authorization was deficient because appellants left blank the section of the authorization form asking them to list each physician or health care provider to which the authorization does not apply.

**Carreras v. Marroquin *Is Distinguishable from this Case***

Pointing to *Carreras v. Marroquin*, Acadian argues that appellants' failure to provide various information—including the identification of every health care provider that treated Gary in the prior five years preceding the day it transported him to Heart Hospital—renders the authorization void, as if appellants had not provided any medical authorization whatsoever; harm to appellees is presumed; the tolling provision therefore is not applicable, and because tolling is not available, abatement also does not apply.

–20–

On the other hand, appellants argue that including the omitted physicians' names would not have contributed to the purpose of section 74.052 (a quick and efficient settlement); they substantially complied with section 74.052; and moreover, *Carreras* is distinguishable from this case because in *Carreras*, no authorization at all was provided before limitations had run. Here, appellants' medical authorization was provided with their pre-suit notice, and appellants claim any alleged omissions were non-prejudicial. We agree with appellants.

We reject Acadian's suggestion that harm is presumed when evaluating whether appellants substantially complied with the prescribed authorization form. *Carreras* does not support a presumption of harm when the plaintiff has supplied medical provider information in the medical authorization and the defendant has made no attempt to procure those medical records. *Carreras* only states, "If an authorization form is not provided pre-suit, the pre-suit negotiation period triggered by the notice requirement would become meaningless, *as doctors receiving notice without an authorization form could not procure medical records from other physicians or institutions to investigate the claims asserted against them*." *Carreras*, 339 S.W.3d at 73 (emphasis added).

The medical authorization at issue in this case is addressed in section 74.052, which specifically contemplates an opportunity to amend the authorization and an abatement period to do so. In contrast, section 74.052(c) was not specifically at issue

in *Carreras*. Rather, *Carreras* addressed the issue of notice under section 74.051 as it related to tolling: "The question before us is whether notice provided *without an authorization form* is considered to be given 'as provided' in Chapter 74 and effective to toll the statute of limitations, or whether notice given without an authorization form is insufficient to toll limitations." *Id.* at 71 (emphasis added). According to *Carreras*, "[i]f the authorization does not accompany the notice, then the benefit of the notice—tolling—may not be utilized." *Id.* at 72. Indeed, the *Carreras* court explicitly acknowledged that "notice and a medical authorization are treated separately for some purposes" and limited its holding to require notice and a medical authorization "to constitute notice 'as provided' by Chapter 74." *Id.* at 72–73 ("The statute of limitations is tolled only if both notice and an authorization form are provided.").

In other words, *Carreras* did not deal with the *content* of the authorization, only its *timing*. Thus, *Carreras* does not hold that a case will be dismissed if a timely tendered authorization arguably is missing some of the information described in section 74.052(c) of the TMLA, and it does not apply to the issue before us here.

### *Appellants Identified All Known Health Care Providers*

Moreover, appellants contend their medical authorizations included all *known* health care providers: "Defendants were provided all of the information in

–22–

Plaintiffs' possession prior to providing notice to Defendants."[11] Acadian did not establish, in this summary judgment context, that the allegedly omitted medical information was available to appellants or that they deliberately failed to disclose it.[12] Nor did Acadian conclusively establish in its motion for summary judgment that Acadian itself lacked such information or the ability to obtain it. And, contrary to Acadian's assertion, appellants identified Texas Regional Medical Center as a health care provider known to have provided services to Gary prior to July 20, 2015. This health care provider admittedly was one of Gary's providers in the "five years prior to the incident made the basis of [the claims]." TEX. CIV. PRAC. & REM. CODE § 74.052(c). Furthermore, Acadian already knew of the existence and location of Texas Regional Medical Center as one of Gary's previous health care providers. Its critical care team picked him up from that location approximately two years earlier to begin his ultimately fatal ambulance trip to Plano.[13]

---

[11] It is hardly unusual that Gary's father—who resided more than 200 miles away from his son's residence—and ex-wife would not readily know in 2017 the names of the health care providers who treated and examined Gary in the five years prior to July 20, 2015 (the date Acadian failed to provide oxygen to Gary while transporting him to the hospital by ambulance). Gary lived alone. There is no indication in the record that Gary's ex-wife or minor children knew this information.

[12] Throughout its motion for summary judgment, Acadian claimed that appellants' omissions were "purposeful" or deliberate. There is no evidence to support this in the record. At other times, Acadian claimed that appellants' "lack of knowledge does not excuse them from complying with" TMLA's medical authorization section.

[13] Acadian's records from July 20, 2015, include significant information from Texas Regional Medical Center, reveal extensive information about Gary's condition and medications, and disclose the identity by name of "patient['s] physician."

***The Summary Judgment Evidence in the Record on Appeal***
***Demonstrates Acadian Was Not Hindered by Any Alleged Omission***

In their response to Acadian's motion for summary judgment, appellants contended their medical authorization substantially complied with the TMLA and did not prevent Acadian "from gathering medical records in this case." According to appellants, the only substantive information missing from the medical information authorization was Gary's place of birth and the identity of some then-unknown medical providers. Moreover, because "there has been no indication that [Acadian] took any steps to investigate the claim by requesting records," the medical information authorization did not hinder the legislative purpose of sections 74.051 and 74.052. Instead of attempting to obtain Gary's medical records, Acadian "remained silent until the statute of limitations had expired and [then asked the trial court] to dismiss [appellants'] case[.]"

The summary judgment record supports appellants' argument that any omission did not hinder Acadian's attempt to evaluate and resolve appellants' claims because Acadian made no attempt whatsoever to investigate and evaluate Gary's health care records. Seemingly, Acadian did not want Gary's medical records for the purpose of pre-suit investigation, negotiation, and settlement, if it wanted them at all.

***The Record on Appeal Demonstrates Acadian Was In Possession of***
***Some of the Very Records It Complains It Was Unable to Obtain***

Nevertheless, Acadian had at least 907 pages of Gary's medical records. Acadian extracted thirty pages for use as evidence to support both of its motions for summary judgment. The records show they were certified on July 11, 2017, more than a week before expiration of the original limitations date and some eighty days prior to the extended date on the estate's survival claim and the father's wrongful death claim. The second page of that collection of Heart Hospital records clearly identifies Gary's primary care physician (Dr. David Carlson), his cardiologist (Dr. Mohammad Khan), and his pain management physician (Dr. Shaw). The third page of these records describes Gary's past medical and surgical history and contains a list of fifteen conditions he suffered prior to his admission. The following page lists eleven medications Gary was taking as of July 20, 2015.

In its amended motion for summary judgment, Acadian quoted extensively from these records, noting the wealth of information they contained. Furthermore, Acadian never established in the trial court that it even needed an authorization to obtain the Heart Hospital records, with their abundance of information relating to Gary's health condition.[14] Whether utilized or not—and whether necessary or not—

---

[14] Obviously, an authorization usually is needed to obtain an individual's health care information, but if a party has the general ability to obtain that information without a TMLA-based authorization, then the failure of a plaintiff to supply such an authorization (either because of inadvertence or because the information is unknown) should be of no legal consequence. Acadian is a health care provider that directly interacted with Heart Hospital on behalf of Gary. In fact, Acadian's accounting documents reveal a check

–25–

appellants' medical authorization provided Acadian with access to all the information it needed to fulfill the purpose of the TMLA's authorization requirement, and Acadian failed to establish as a matter of law that it did not have access to or otherwise possess the information, or that any alleged deficiencies interfered with its ability to investigate and potentially settle appellants' claims.

### *Deceased Persons Do Not Have an Address, Email Address, or Telephone Number*

Finally, Acadian argued that summary judgment was warranted because the authorization failed "to disclose Decedent's place of birth, residential address, telephone number, and email address." However, Gary had been deceased more than two and one-half years at the time Acadian's amended motion for summary judgment was filed. Therefore, he did not have a "residential address, telephone number, and email address."

In any event, Acadian already possessed Gary's last residential address in its own records of July 20, 2015, and there is no indication in the record that Gary had an email address, or that appellants were in possession of that information. While Gary's place of birth was omitted, it is impossible to imagine in this case how the absence of that information from the medical authorization significantly interfered

---

reference and an amount relating to "Baylor for Medical Records," with a related reference showing a date of September 5, 2017—less than a week after appellants' lawsuit was filed.

with Acadian's ability to investigate and negotiate appellants' claims.[15]  And, as noted above, the legislature obviously felt the same, as evidenced by its replacement in 2019 of the place of birth inquiry with "date of birth"—information provided by appellants' medical authorization and already in Acadian's own records.

### *Appellants' Medical Authorization Is Sufficient to Toll the Statute of Limitations*

On this record, we conclude the medical authorization attached to the Maypoles' pre-suit notice tolled the limitations period under section 74.051(c).

In doing so, we reject the notion that a "virtually perfect" authorization must be served with the pre-suit notice to trigger tolling limitations under that section.[16] The TMLA's pre-suit notice and medical authorization requirements were designed to encourage the parties to negotiate and settle disputes prior to suit, *see Hebner*, 498 S.W.3d at 42, not to be a game of legal "gotcha" that courts can use to deny an entire class of claimants access to the judicial system—in this case, for failing to provide information not required by the language of the TMLA; information not in appellants' possession; information already in Acadian's possession; or

---

[15] As indicated earlier, Acadian's July 20, 2015 medical records relating to Gary reveal extensive information about Gary's various medical conditions and medications, and they identify by name the "patient['s] physician."  Those records also contain Gary's date of birth, residential address, and social security number.

[16] *See* R. Brent Cooper et al., *House Bill 4 and Proposition 12: Texas Tort Reform and Fifteen Years of Interpretation / Part Eight:  Chapter 74, Subchapter B: Notice and Medical Authorizations*, 51 TEX. TECH. L. REV. 471, 474 (2019) (noting that some courts, while professing adherence to the TMLA's purpose to allow for pre-suit investigations, "go even further" than *Carreras* "and require a virtually perfect authorization to be served with the notice to trigger tolling limitations").

information—like Gary's place of birth—that has no bearing on the ability of a defendant to obtain sufficient health care information to investigate and resolve medical negligence claims.

This is not a case where Acadian "could not" procure medical records. Acadian most certainly could have procured medical records; it just decided not to. Acadian cannot now complain there were other records somewhere in the universe it was unable to procure when the summary judgment evidence shows it had no intention of procuring medical records even when appellants provided health care provider information.

Here, the record shows:

(1) Acadian received from appellants a medical authorization that identified Heart Hospital as a health care provider that treated and examined Gary for the incident giving rise to the claim, and whose more than 900 pages of records prominently listed at the outset (a) the names of Gary's primary care physician (with phone number), cardiologist, and pain management doctor; (b) fifteen pre-existing health conditions Gary suffered from at the time of his hospital admission; (c) eleven medications Gary was taking upon admission; (d) Gary's date of birth, residential address, phone number, and the last four digits of his social security number; and (e) other substantial information about Gary's past and then-current health conditions.[17]

(2) Acadian already had its own significant medical records from the day of the incident giving rise to the claim, which (a) identified Heart Hospital as a provider who examined and treated Gary for the incident giving rise to the claim; (b) identified Texas Regional

---

[17] We note the authorization went unused by Acadian and, in any event, was unnecessary because Acadian already had access to and obtained these records.

Medical Center as a provider who had treated Gary in the five years preceding the incident giving rise to the claim; (c) listed the name of Gary's physician; and (d) disclosed other information relating to Gary's past and then-current medical conditions and his medications, as well as his date of birth, address, and full social security number.

(3) Acadian received from appellants an authorization that identified Texas Regional Medical Center as a health care provider that treated and examined Gary within five years preceding the claim made the basis of the lawsuit.[18]

(4) Acadian received from appellants an authorization that was apparently unrestricted and allowed Acadian to obtain any and all of Gary's health care information, including information it already possessed.

Other than its various conclusory proclamations, Acadian offered no evidence that it did not have or was unable to obtain information it needed to conduct an investigation or negotiate a settlement of appellants' claims. Acadian does not dispute it did not try to obtain any medical information with the medical information authorization appellants provided. Nor did Acadian establish that appellants withheld information about Gary's health care providers. All indications in the record are that Acadian had all of the information about Gary's health care providers that appellants could have provided and that Acadian already had substantial information in its possession, yet intentionally chose not to evaluate appellants' claims or seek their resolution. Rather, Acadian sat idly until the statute of

---

[18] There is no indication in the record Acadian ever used this authorization.

–29–

limitations expired and then asked the trial court to dismiss appellants' case, claiming, without proof, appellants had seriously harmed Acadian.

In truth, any alleged omissions in appellants' medical authorization did not seriously or significantly hinder Acadian's ability to accomplish the purpose of section 74.052 of the TMLA, namely to investigate appellants' claims and possibly resolve them.

On this record, and in light of applicable standards,[19] appellants' claims should not have been dismissed on summary judgment. Our conclusion is based on the specific record before us. To the extent that our sister courts may have concluded otherwise based on the same circumstances as those appearing in this record, we disagree and decline to follow such opinions.[20]

---

[19] A party moving for traditional summary judgment has the burden to establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). In our de novo review of a traditional summary judgment, any evidence favorable to the non-movant will be taken as true, every reasonable inference is indulged in favor of the non-movant, and any doubts are resolved in the non-movant's favor. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). It is clear Acadian failed to conclusively establish that appellants' omissions in their authorization seriously hindered Acadian in its ability to investigate and potentially resolve the claim at an early stage. Even if the burden were otherwise, Acadian's own evidence established Acadian was not hindered. "The nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its . . . defense." *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989). In a comparable circumstance, where a party invokes the discovery rule in an effort to extend the deadline to file its claim, it is nevertheless the summary judgment movant's burden to conclusively disprove the opposing party's entitlement to the benefit of the discovery rule. *See, e.g.*, *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990) ("A defendant seeking summary judgment on the basis of limitations must . . . negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury.") (citing *Woods v. Mercer*, 769 S.W.2d 515, 518 n.2 (Tex. 1988); *Weaver v. Witt*, 561 S.W.2d 792 (Tex. 1977)).

[20] *See Thome v. Hampton*, No. 09-20-00022-CV, 2022 WL 802562, at *6 (Tex. App.—Beaumont Mar. 17, 2022, no pet. h.) (mem. op.) (reversing and rendering judgment in favor of provider who moved for judgment notwithstanding the verdict); *Bouchard v. Taylor*, No. 13-19-00648-CV, 2021 WL 3777166, at

We resolve appellants' first issue in their favor.

### *Abatement Was the Appropriate Remedy in this Case*

In their second issue, appellants argue the case should have been abated and not dismissed even if there was a demonstrated hindrance to Acadian's ability to investigate, evaluate, and negotiate. *See Carreras*, 339 S.W.3d at 73 (as to the minors); *Mock*, 379 S.W.3d at 395 n.3 (as to the estate and the father). We agree with appellants. The Texas Legislature declined to require dismissal of the case instead of abatement. *See Lippincott*, 462 S.W.3d at 508–09 (we must presume legislature intended each of statute's words to have a purpose and words not included

---

*4 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2021, no pet.) (mem. op.) (reversing and rendering judgment in favor of provider who moved for summary judgment); *Tanhui v. Rhodes-Madison*, No. 12-20-00240-CV, 2021 WL 1916819, at *3–4 (Tex. App.—Tyler May 12, 2021, no pet.) (mem. op.) (same); *Polsky v. Bassett*, No. 13-18-00553-CV, 2020 WL 6052547, at *4–5 (Tex. App.—Corpus Christi–Edinburg Oct. 8, 2020, pet. denied) (mem. op.) (affirming summary judgment for provider); *Heinzen v. Whitford*, No. 14-18-00830-CV, 2020 WL 4461366, at *4–5 (Tex. App.—Houston [14th] Aug. 4, 2020, no pet.) (mem. op.) (same); *Colia v. Ewing*, No. 02-19-00109-CV, 2020 WL 241978, at *2–3 (Tex. App.—Ft. Worth Jan. 16, 2020, pet. denied) (mem. op.) (same); *Salinas v. Methodist Healthcare Sys.*, No. 07-19-00026-CV, 2019 WL 3807871, at *2–3 (Tex. App.—Amarillo Aug. 13, 2019, no pet.) (mem. op.) (same); *Areno v. Bryan*, No. 01-18-00085-CV, 2018 WL 6684861, at *3–4 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, pet. denied) (mem. op.) (same); *Galloway v. Atrium Med. Ctr., L.P.*, 558 S.W.3d 316, 321–22 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (affirming trial court's order granting providers' second joint motion for reconsideration on their summary judgment motions); *Walthour v. Advanced Dermatology*, No. 14-17-00332-CV, 2018 WL 1725904, at *3–4 (Tex. App.—Houston [14th Dist.] Apr. 10, 2018, no pet.) (substitute mem. op.) (affirming summary judgment for provider); *Davenport v. Adu-Lartey*, 526 S.W.3d 544, 553–54 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (same); *Borowski v. Ayers*, 524 S.W.3d 292, 303–06 (Tex. App.—Waco 2016, pet. denied) (reversing trial court's denial of providers' summary judgment motions and remanding for further proceedings consistent with the opinion); *Johnson v. PHCC-Westwood Rehab. & Health Care Ctr., LLC*, 501 S.W.3d 245, 251–52 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (affirming summary judgment for provider); *Myles v. St. Luke's Episcopal Hosp.*, 468 S.W.3d 207, 210–11 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (same); *Cantu v. Mission Reg'l Med. Ctr.*, No. 13-12-00568-CV, 2014 WL 1879292, at *3–5 (Tex. App.—Corpus Christi–Edinburg May 8, 2014, no pet.) (mem. op.) (same); *Brannan v. Toland*, No. 01-13-00051-CV, 2013 WL 4004472, at *2–3 (Tex. App.—Houston [1st Dist.] Aug. 6, 2013, pet. denied) (mem. op.) (same); *Mitchell*, 376 S.W.3d at 837–39 (same); *Nicholson v. Shinn*, No. 01-07-00973-CV, 2009 WL 3152111, at *4–6 (Tex. App.—Houston [1st Dist.] Oct. 1, 2009, no pet.) (mem. op.) (same).

–31–

were purposefully omitted); *Leland*, 257 S.W.3d at 207 (same). Affording plaintiffs a reasonable opportunity to have their claims heard on the merits is a bedrock principle of our judicial system. *See Hebner*, 498 S.W.3d at 43 (noting constitutional limitations upon power of courts to dismiss an action, and upon power of legislature to require such dismissal, without affording a party the opportunity for a hearing on the merits); *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009) (parties are entitled to have their cases decided on the merits) (citing *Able Supply Co. v. Moye*, 898 S.W.2d 766, 773 (Tex.1995) (orig. proceeding)); *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 918 (noting constitutional limitations upon power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause); *see also* TEX. GOV'T CODE § 311.021(3) ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended[.]"). In this case, appellants were denied that right.

The TMLA does not require the harsh remedy of dismissal of a case for a medical authorization that includes the information provided by appellants and was otherwise readily available to Acadian, and we should not read that draconian result into the statute when appellants' opportunity to have their claims heard on the merits is at stake. If the Texas Legislature wanted a claimant's health care liability claim to be dismissed with no opportunity to cure in the circumstances of this case, the TMLA would require it. Indeed, the Texas Legislature requires dismissal in section

–32–

74.351(b)(2) of the TMLA for the failure to file a Chapter 74-compliant expert report. TEX. CIV. PRAC. & REM. CODE § 74.251(b). But even then, the TMLA provides the plaintiff an opportunity to cure the deficiency. *See id*. § 74.351(c) ("[T]he court may grant one 30-day extension to the claimant in order to cure the deficiency.").[21]

Moreover, "[w]hen the Legislature uses a word or phrase in one part of a statute but excludes it from another the term *should not be implied where it has been excluded*." *Cadena Commercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 329 (Tex. 2017) (emphasis added); *see also Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) ("When the Legislature employs a term in one section of a statute and excludes it in another section, the term should not be implied where excluded."). Here, the plain language of the statute does not impose dismissal as a consequence of tendering a defective

---

[21] We are instructed that "trial courts should be lenient in granting thirty-day extensions and must do so if deficiencies in an expert report can be cured within the thirty-day period." *Scoresby*, 346 S.W.3d at 554. Tools to cure or avoid a potentially fatal deficiency in a lawsuit abound in our civil practice. *See, e.g.*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004) ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction . . . the plaintiffs should be afforded the opportunity to amend."); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999) (fraudulent concealment delays accrual of cause until claimant knows true facts); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (discovery rule defers accrual of cause until claimant knows facts giving rise to claim); *GTE Commc'ns. Sys. Corp. v. Tanner*, 856 S.W.2d 725, 732 (Tex. 1993) (orig. proceeding) (disallowing "death penalty" sanction of dismissal without first imposing lesser sanctions) ("Before a court may deprive a party of its right to present the merits of its case because of discovery abuse, it must determine that 'a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit.'") (quoting *TransAmerican Nat. Gas Corp.*, 811 S.W.2d at 918); *Marino v. King*, 355 S.W.2d 629, 633 (Tex. 2011) (accident or mistake may justify the withdrawal of case-determinative deemed admissions). The examples are legion. As our supreme court stated in *Marino*, "Constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults." *Id.* at 634.

medical authorization, nor does it preclude abatement as a remedy to cure any harm that may have occurred. Thus, we should "adopt a construction that 'does the least damage to the statutory language, and best comports with the statute's purpose.'" *Id*. at 42–43 (quoting *Zanchi*, 408 S.W.3d at 379–80). Dismissal here, as in *Hebner*, would not comport with the TMLA's legislative purpose to eliminate frivolous but not potentially meritorious claims, *id*. at 43, and would violate the "constitutional limitations upon the power of courts to dismiss an action without affording a party the opportunity for a hearing on the merits." *Id*. (citing *Scoresby*, 346 S.W.3d at 554).[22]

Therefore, as to the estate, the father, and the minors, we conclude the case should have been abated to allow an opportunity to cure any deficiency in the authorization. Abatement in this case would comport with precedent and meet the "[c]onstitutional imperatives [that] favor the determination of cases on their merits rather than on harmless procedural defaults." *Marino*, 355 S.W.3d at 634.

We resolve appellants' second issue in their favor.

---

[22] Significantly, the supreme court further held that "by choosing to remain silent until the . . . deadline expired and then arguing [the plaintiffs] had filed 'no report,' [the defendant] waived any objection to" the report served with the pre-suit notice. *Hebner*, 498 S.W.3d at 44. Thus, Acadian—when confronted with an authorization that provided substantial information and access to Gary's records—should have promptly raised with appellants any alleged deficiency, demanded that appellants cure it, and if necessary, sought abatement to cure the deficiency. *See* TEX. CIV. PRAC. & REM. CODE § 74.052(a); *see also Carreras*, 339 S.W.3d at 73–74 ("If notice is provided without an authorization well within the statute of limitations, and the case could be filed sixty days later and still fall within the limitations period, the defendant's statutory remedy is to halt proceedings until an authorization form is received. The abatement remedy fulfills that purpose.").

### *Our Conclusion in this Case Is Consistent With*
### Rabatin v. Kidd, Mock v. Presbyterian Hosp. of Plano, *and*
### Broderick v. Universal Health Services, Inc.

The El Paso Court of Appeals came to a similar conclusion in *Rabatin v. Kidd*, 281 S.W.3d 558 (Tex. App.—El Paso 2008, no pet.). In *Rabatin*, the plaintiff timely tendered a pre-suit notice accompanied by a medical information release authorization but failed to include in the authorization the "doctors' records who had treated her within five years of the treatment listed as forming the basis of the claim." The *Rabatin* court nevertheless concluded that limitations was tolled, and in such circumstances abatement—and not dismissal—was the proper remedy, in part because the defendant was able to obtain records from the medical facility that treated the claimant for the injury that was the subject of the claim. "Tolling the statute of limitations when a notice letter and medical authorization form, albeit a[n] improperly filled out form, gives fair warning of a claim and an opportunity to abate the proceedings for negotiations and evaluation of the claim, which carries out the Legislature's intent in enacting the statute." *Id.* at 562.

A few courts of appeals have concluded that post–*Carrerras*, the *Rabatin* case is no longer good law.[23] We disagree, and this Court recognized as much in *Mock*, 379 S.W.3d at 395. In *Mock*, we considered the appeal of a take-nothing summary judgment against plaintiffs in their wrongful death and survival action premised on

---

[23] *See, e.g.*, *Johnson*, 501 S.W.3d at 251; *Myles*, 468 S.W.3d at 210 n.1; *Nicholson*, 2009 WL 3152111, at *5–6.

claims of medical negligence. The trial court had dismissed the case because the medical authorization accompanying the pre-suit notice-of-claim to the defendants, although timely, was deficient for mistakenly authorizing the release of some of the decedent's medical information to plaintiffs' attorney, not to the defendants. *Id.* at 392. We framed the issue and resolved the case as follows:

> The question presented is whether a claimant is entitled to the 75-day tolling period if he timely furnishes the statutorily prescribed medical authorization form but completes one of the blanks incorrectly. We conclude that such a claimant is entitled to the 75-day tolling period and thus that [defendants] were not entitled to summary judgment.

*Id.* at 394.[24] We noted that in *Carreras*, "the supreme court held that tolling is unavailable if the claimant fails to furnish any medical authorization form at all within limitations," *id.*; we quoted *Rabatin* favorably as supportive of our result, *id.*; and, by our discussion of *Carreras*, we signaled that abatement, not dismissal, is the cure for any harm, *id.* at 394, 395 n.3. Importantly, we noted the defendants adduced no evidence "that they ever requested medical records that appellants refused to furnish, or that the error in appellants' medical authorization form hampered their ability to investigate the claims in any respect." *Id.* at 392 n.1. In such a case, this Court stated, "Any injury to the potential defendants from the delay is removed by

---

[24] Notably, in *Mock* the mistake in "one of the blanks" deprived the defendant of the ability to obtain an entire category of the decedent's medical records. *See id.* at 394, 395 n.2. That is not the case here.

the legislature's provision of an abatement of proceedings lasting until 60 days after a proper authorization is received." *Id*. at 395 n.3.

Our case of *Broderick v. Universal Health Services, Inc*., No. 05-16-01379-CV, 2018 WL 1835689 (Tex. App.—Dallas Apr. 18, 2018, no pet.) (mem. op.), likewise does not support Acadian's position. The plaintiff in *Broderick* "did not simply make a mistake." Instead, she provided an "authorization" that did not identify any of her health care providers and authorized release of health care information only to her own attorney, not to the defendant. *Id*. at *5. We equated this with a "complete failure to provide an authorization" that precluded the tolling of limitations. *Id*. This is hardly the case here. Moreover, a reading of *Broderick* reveals that, unlike in this case, the defendant there provided summary judgment evidence that the plaintiff's failure interfered with the legislative purpose of the notice and authorization provision of the TMLA. *Id*. at *6. In contrast, Acadian itself provided substantial evidence in its own summary judgment filings that any omission by appellants did not seriously interfere with its ability to investigate, negotiate, and potentially resolve their claims, and Acadian points to no evidence of any such interference.

## CONCLUSION

Having resolved appellants' issues in their favor, we reverse the trial court's judgment and remand the case for proceedings consistent with this opinion.

/Ken Molberg//

180539f.p05

KEN MOLBERG
JUSTICE

Schenck, J., concurring, joined by Smith, J. and Evans, J.
Osborne, J., concurring without opinion



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

GARY LEW MAYPOLE, SR.,
INDIVIDUALLY AND AS
PERSONAL REPRESENTATIVE
OF THE ESTATE OF GARY LEW
MAYPOLE II, DECEASED, AND
TAMARA JEAN MAYPOLE, AS
NEXT FRIEND OF H.K.M. AND
D.T.M., MINORS, Appellants

No. 05-18-00539-CV     V.

ACADIAN AMBULANCE
SERVICE, INC. AND ACADIAN
AMBULANCE SERVICE OF
TEXAS, LLC, Appellees

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-17-11335.
Opinion delivered by Justice
Molberg. Court sitting en banc.

On the motion for rehearing en banc filed by appellants GARY LEW
MAYPOLE, SR., Individually and as Personal Representative of the Estate of Gary
Lew Maypole II, Deceased, and TAMARA JEAN MAYPOLE, as Next Friend of
H.K.M. and D.T.M., Minors, we **WITHDRAW** our opinion dated August 21, 2019,
and **VACATE** the judgment of that date.

In accordance with this Court's opinion of this date, the judgment of the trial
court is **REVERSED** and this cause is **REMANDED** to the trial court for further
proceedings consistent with this opinion.

It is **ORDERED** that appellants GARY LEW MAYPOLE, SR., Individually
and as Personal Representative of the Estate of Gary Lew Maypole II, Deceased, and
TAMARA JEAN MAYPOLE, as Next Friend of H.K.M. and D.T.M., Minors,

–39–

recover their costs of this appeal from appellees ACADIAN AMBULANCE SERVICE, INC., and ACADIAN AMBULANCE SERVICE OF TEXAS, LLC.

Judgment entered this 10th day of June, 2022